UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------ X

JAMES JACKSON,

                              Plaintiff,

              -against-

THE CITY OF NEW YORK, NYPD OFFICER MOHD HOSSAIN (BADGE NO. 18246), NYPD OFFICER ANTHONY MARMORALE (BADGE NO. 8497), NYPD OFFICER MICHAEL SIEVERS (BADGE NO. 23757), NYPD OFFICER CARLOS VELEZ (BADGE NO. 1349), NYPD SERGEANT MARCOS RODRIGUEZ (BADGE NO. 4154), and NYPD MEMBERS JOHN OR JANE DOE # 1-3,

                              Defendants.

------------------------------------------------------------------------------------ X

**VERIFIED COMPLAINT**

**Index No.:**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff **JAMES JACKSON,** by and through his attorneys, **KAISHIAN & MORTAZAVI LLC**, by Maryanne K. Kaishian, an attorney duly licensed to practice before this Court in the Eastern District of New York, hereby complains of Defendants as follows:

<u>**PRELIMINARY STATEMENT**</u>

1. On July 17, 2024, in Kings County, members of the New York City Police Department (NYPD) unlawfully stopped, searched, and arrested Plaintiff **JAMES JACKSON** while Plaintiff was commuting home from work using the New York City subway system. The charges against Plaintiff were dismissed in their entirety on October 23, 2024. As a result of Defendants' conduct, Plaintiff suffered injuries and damages. Plaintiff now charges Defendants with, *inter alia*, excessive force and unlawful search and seizure under <u>42 U.S.C. 1983</u> and New York City law.

<u>**PARTIES**</u>

2. **PLAINTIFF JAMES JACKSON** is, and was at all relevant times, a lawful adult resident of Kings County, City and State of New York.

3.    **DEFENDANT CITY OF NEW YORK** ("Defendant City" or "New York City") was, at all relevant times, and is a municipal corporation duly organized and existing under the laws of the State of New York, acting by and through its agencies, including but not limited to the New York City Police Department ("NYPD") and its employees and agents.

4.    **DEFENDANT NYPD POLICE OFFICER MOHD HOSSAIN (Badge #18246) ("Defendant Hossain")**, at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, **DEFENDANT HOSSAIN** was acting within the scope of his employment and in his capacity as an agent and/or employee of **DEFENDANT CITY**. At all relevant times, **DEFENDANT HOSSAIN** was assigned to the NYPD's Transit Bureau District 33. He is sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

5.    **DEFENDANT NYPD POLICE OFFICER ANTHONY MARMORALE (Badge #8497) ("Defendant Marmorale")**, at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, **DEFENDANT MARMORALE** was assigned to the NYPD's Transit Bureau District 33. At all relevant times, **DEFENDANT MARMORALE** was acting within the scope of his employment and in his capacity as an agent and/or employee of **DEFENDANT CITY**. He is sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

6.    **DEFENDANT NYPD OFFICER MICHAEL SIEVERS (Badge #23757) ("Defendant Sievers")**, at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, **DEFENDANT SIEVERS** was assigned to the NYPD's Transit Bureau District 33. At all relevant times, **DEFENDANT SIEVERS** was acting within the scope of his employment and in his capacity as an agent and/or employee of

**DEFENDANT CITY**. He is sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

7.      **DEFENDANT NYPD OFFICER CARLOS VELEZ (Badge #1349) ("Defendant Velez")**, at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, **DEFENDANT VELEZ** was assigned to the NYPD's Transit Bureau District 33. At all relevant times, **DEFENDANT VELEZ** was acting within the scope of his employment and in his capacity as an agent and/or employee of **DEFENDANT CITY**. He is sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

8.      **DEFENDANT NYPD SERGEANT MARCOS RODRIGUEZ (Badge #4154), ("Defendant Rodriguez")**, at all relevant times, was a sergeant and supervisor of the police officer **NYPD DEFENDANTS** employed by **DEFENDANT CITY** through its police department, the NYPD. At all relevant times, **DEFENDANT RODRIGUEZ** was assigned to the NYPD's Transit Bureau District 33. At all relevant times, **DEFENDANT RODRIGUEZ** was acting within the scope of his employment and in his capacity as an agent and/or employee of **DEFENDANT CITY**. He is sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

9.      **DEFENDANT NYPD DOES # 1 -3 (collectively "DEFENDANT NYPD DOES")**, at all relevant times, are believed to be police officers employed by Defendant City through its police department, the NYPD. At all relevant times, **DEFENDANT NYPD DOES** were believed to be assigned to the NYPD's Transit Bureau District 33. At all relevant times, **DEFENDANT NYPD DOES** were acting within the scope of their employment and in his capacity as agents and/or

employees of **DEFENDANT CITY**. They are sued individually and as an employee/agent of **DEFENDANT CITY** for whom **DEFENDANT CITY** is liable.

10.    At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.    Each and every act and omission by the individual **DEFENDANT NYPD MEMBERS** alleged herein occurred while said Defendants were acting within the scope of their employment by **DEFENDANT CITY**.

12.    The **DEFENDANT NYPD MEMBERS** were duly appointed and acting officers, servants, employees, and agents of **DEFENDANT CITY** who were acting for, on behalf of, and with the power and authority vested in them by **DEFENDANT CITY** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

13.    At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

14.    Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants take any steps to intervene in, the abusive and/or constitutionally and legally deficient conduct of their colleagues.

15.    Each individual **DEFENDANT NYPD MEMBER** is sued in their respective individual capacities and as employees for whom **DEFENDANT CITY** is liable.

16.     As described herein, the unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, including 1367(a), and 1441, and 42 U.S.C. § 1983.

18.     Venue is proper, pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

19.     The monetary damages amount sought by Plaintiff exceeds the amount over which lower courts may exercise discretion.

20.     This action was initiated within three years of the accrual of all claims pursuant to 42 U.S.C. § 1983 and  NYC Admin. Code § 8-801, *et seq.*

## STATEMENT OF MATERIAL FACTS

21.     On July 17, 2024, at approximately 11:00 PM, **PLAINTIFF JAMES JACKSON** was present at the Broadway Junction subway stop in Kings County, City and State of New York, located at or near 2399 Fulton St.

22.     **PLAINTIFF JAMES JACKSON** works as a site manager for a maintenance and construction company.

23.     At the time of his arrest, **PLAINTIFF JAMES JACKSON** was returning home from assisting with a water system repair and building check at one of the properties he manages through the course of his employment.

24.     **PLAINTIFF** paid his fare to enter the New York City transit system and entered lawfully through a turnstile.

25.    There was no warrant for **PLAINTIFF's** arrest.

26.    **PLAINTIFF** had committed no crimes or infractions.

27.    Defendants possessed no probable cause to arrest **PLAINTIFF**.

28.    Defendants possessed no legal justification to search and/or seize **PLAINTIFF**.

29.    **PLAINTIFF** had no criminal matters pending against him.

30.    **PLAINTIFF** was not on probation or parole.

31.    **PLAINTIFF** had not missed court or otherwise been the subject of any warrant in the two years prior to his arrest.

32.    At the time he was stopped, **PLAINTIFF** was wearing work boots with paint splatter, protective safety glasses on top of his head, a bright orange shirt, and clothing indicative of his work as a site manager.

33.    As **PLAINTIFF** entered the open doors of the J train, **DEFENDANTS NYPD OFFICER MOHD HOSSAIN (BADGE NO. 18246), NYPD OFFICER ANTHONY MARMORALE (BADGE NO. 8497), NYPD OFFICER MICHAEL SIEVERS (BADGE NO. 23757), NYPD OFFICER CARLOS VELEZ  (BADGE NO. 1349),** and **NYPD SERGEANT MARCOS RODRIGUEZ (BADGE NO. 4154)** surrounded **PLAINTIFF**.

34.    **DEFENDANTS** were each in plain clothes.

35.    **DEFENDANT HOSSAIN** pointed to **PLAINTIFF** and stated, while standing in the doorway of the train, in sum and substance, "You come here."

36.    **DEFENDANT HOSSAIN** and **VELEZ** eacb held the doors of the train open and directed **PLAINTIFF** to the platform.

37.    **PLAINTIFF** exited the train.

38.    **PLAINTIFF** complied with all orders issued by **DEFENDANTS**.

39.    At no time did **PLAINTIFF** interfere with any lawful administration of **DEFENDANTS'** duties.

40.    **DEFENDANT HOSSAIN** reached his hand inside **PLAINTIFF's** clothing and removed a small multipurpose knife from within his right pants pocket.

41.    **PLAINTIFF** neither consented to nor interfered with this search.

42.    **DEFENDANT VELEZ** demanded to see **PLAINTIFF's** identification.

43.    **PLAINTIFF** immediately provided his lawful identification to **DEFENDANT VELEZ**.

44.    **PLAINTIFF** presented his valid New York State license bearing **PLAINTIFF's** true legal name.

45.    **DEFENDANT VELEZ** entered **PLAINTIFF's** information into his cell phone to conduct an information search.

46.    This search confirmed that **PLAINTIFF** had no active warrants, i-cards, or pending criminal cases.

47.    However, this search also revealed that **PLAINTIFF** had been convicted in a 2008 robbery-related matter. That incident occurred when **PLAINTIFF**, who was 34 years old at the time of this arrest, was just 19 years old. **PLAINTIFF** had served an approximately three-year sentence more than a decade prior to the night of his arrest by **DEFENDANTS**.

48.    Despite lacking lawful authority to place **PLAINTIFF** under arrest, **DEFENDANT VELEZ** ordered **PLAINTIFF** to place his hands behind his back.

49.    **DEFENDANT HOSSAIN,** under the supervision of **DEFENDANTS VELEZ** and **RODRIGUEZ**, applied handcuffs to **PLAINTIFF's** wrists.

50.    **DEFENDANT HOSSAIN,** under the supervision of **DEFENDANTS VELEZ** and **RODRIGUEZ**, then conducted another search of **PLAINTIFF's** person and property.

51.     **PLAINTIFF** neither consented to nor interfered with this search.

52.     During this search, **DEFENDANT HOSSAIN** located a small multipurpose knife that **PLAINTIFF** used for his work in construction.

53.     This knife was not publicly visible prior to this unlawful search.

54.     No part of the blade was visible at any time prior to this unlawful search.

55.     At no time did **PLAINTIFF** pose a risk of harm to **DEFENDANTS** or to any other person.

56.     **DEFENDANT VELEZ** showed **DEFENDANT RODRIGUEZ** the results of the search of **PLAINTIFF's** name that **DEFENDANT VELEZ** had conducted on his cell phone.

57.     After viewing this information, **DEFENDANT RODRIGUEZ** then ordered the officers at the scene to transport **PLAINTIFF** to the transit bureau's precinct.

58.     **DEFENDANTS** then escorted **PLAINTIFF** to the NYPD's 33rd Transit Bureau precinct, which is located within the Broadway Junction train station in Kings County.

59.     **DEFENDANT HOSSAIN** seized **PLAINTIFF's** cell phone.

60.     **DEFENDANT HOSSAIN,** under the supervision of **DEFENDANTS VELEZ** and **RODRIGUEZ**, conducted another search of **PLAINTIFF's** person and property.

61.     **DEFENDANTS** locked **PLAINTIFF** inside a holding cell.

62.     **DEFENDANTS** temporarily removed **PLAINTIFF's** handcuffs while inside the holding cell.

63.     While **PLAINTIFF** remained in NYPD custody, **NYPD DEFENDANTS**, together and/or individually, seized **PLAINTIFF's** cell phone and executed a search upon the same without lawful authority.

64.     This search included the access and search of this device to ascertain **PLAINTIFF's** digital IMEI number.

65. **PLAINTIFF** did not consent to a search of his cell phone.

66. **PLAINTIFF** requested a phone call, which **DEFENDANT RODRIGUEZ** agreed to grant after approximately two (2) hours in custody.

67. **DEFENDANT RODRIGUEZ** asked who **PLAINTIFF** wished to contact.

68. **PLAINTIFF** provided the name of his former partner, with whom he coparents, as he needed to coordinate childcare and obligations while he remained in custody.

69. **PLAINTIFF's** former partner was an NYPD member.

70. Upon realizing this fact, **DEFENDANT RODRIGUEZ** stated, in sum and substance, "If you had told us sooner we could have let you go."

71. **PLAINTIFF** remained at the Transit Bureau District 33 precinct overnight.

72. On the morning of July 18, 2024, **DEFENDANT DOE # 1**, who appeared to be a Black male officer, applied overly-tight handcuffs to **PLAINTIFF's** wrists, causing **PLAINTIFF** serious pain, bruising, and swelling to his wrists and shoulders.

73. **PLAINTIFF** requested on several occasions that **NYPD DEFENDANTS** loosen these handcuffs.

74. Additional individuals in custody noted that **PLAINTIFF** was in severe pain and also requested that the handcuffs were loosened on his behalf.

75. **DEFENDANT NYPD DOES # 1 – 3** each refused to do so for approximately three (3) hours.

76. **PLAINTIFF** suffered increasingly severe pain from the overly-tight handcuffs, and suffered numbness, tingling, bruising, swelling, and nerve damage as a result of **DEFENDANTS'** actions.

77.     **DEFENDANT NYPD DOES # 1 – 3**, together, transported **PLAINTIFF** to NYPD Central Booking at 120 Schermerhorn St. in Kings County, City and State of New York.

78.     **PLAINTIFF** also requested multiple times during this transportation that **DEFENDANTS** loosen his handcuffs and **DEFENDANTS** refused.

79.     **DEFENDANTS** forced **PLAINTIFF** to remain in NYPD custody for approximately twenty-four (24) hours until his arraignment.

80.     **DEFENDANTS HOSSAIN, VELEZ, and RODRIGUEZ** submitted false information to the Brooklyn District Attorney's Office, including that the knife possessed by **PLAINTIFF** was publicly visible, "in plain view," and that **DEFENDANTS** possessed lawful authority to seize and search **PLAINTIFF**.

81.     **DEFENDANTS** knew this information to be false.

82.     **DEFENDANTS' NYPD** paperwork indicates that the knife was recovered from within **PLAINTIFF's** pocket, where it was concealed.

83.     This information was provided to induce **PLAINTIFF's** prosecution and to influence a finder of fact against **PLAINTIFF**.

84.     **PLAINTIFF** was arraigned on or about July 18, 2024, on false charges of P.L. 265.01(1), Criminal Possession of a Weapon in the Fourth Degree, an A Misdemeanor, and 21 N.Y.C.R.R. 1050.8(a), Possession of a Weapon on a Railroad,  an unclassified misdemeanor.

85.     **PLAINTIFF** was released on his own recognizance.

86.     The criminal matter terminated in **PLAINTIFF's** favor with a dismissal on or about October 23, 2024.

87.     Through the conduct described above, **DEFENDANTS** forced **PLAINTIFF** to suffer psychological anguish and emotional damages, including humiliation, fear, anxiety, decreased

function due to migraines and related symptoms of traumatic brain injury, fear of police interactions, depression, isolation, change in routine to avoid leaving his home, change in routine to avoid encountering NYPD members in public spaces during the course of regular activities, and loss of enjoyment of life.

88.     Through the conduct described above, **DEFENDANTS** forced **PLAINTIFF** to expend costs and suffer lost income and further negative employment consequences.

89.     **DEFENDANTS** caused **PLAINTIFF** to miss work during his detention on July 18, 2024.

90.     Through the conduct described above, **DEFENDANTS** have left **PLAINTIFF** with serious lasting injuries, reduced range of motion, and pain to his shoulders and wrists, which require ongoing care and interferes with his daily life.

91.     **DEFENDANTS** caused **PLAINTIFF** to miss work, become unable to perform his full work duties, and suffer further negative consequences related to his shoulder and wrist injuries.

92.     **DEFENDANTS** caused **PLAINTIFF** to suffer fear, anxiety, humiliation, and psychological damages as a result of their conduct, including fear of future baseless arrests and loss of enjoyment in his daily life.

93.     **DEFENDANTS** forced **PLAINTIFF** to expend significant costs, including medical costs, including requiring imaging, medical intervention, physical therapy, and further care.

94.     The full extent of **PLAINTIFF's** injuries and damages are not yet known and their effects are ongoing.

## FIRST CLAIM FOR RELIEF

**Municipal Liability**
*As Against DEFENDANT CITY Pursuant to* **Monell v Social Svcs** (*436 U.S. 658 [1978]*) *and 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Against Unlawful Search and Seizure Under the Fourth and Fourteenth Amendments*

95.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

96.     At all relevant times, **DEFENDANT CITY**, by its policymaking officials, was responsible for implementing and enforcing policies and procedures on behalf of **DEFENDANT CITY**.

97.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, *inter alia*, **DEFENDANT CITY'S** policies of unlawful searches and seizures of individuals' cell phones, including to ascertain, store, track, and utilize IMEI numbers.

98.     All wrongful acts or omissions complained of herein were carried out by the individual named and unnamed NYPD member defendants pursuant to the above-described policies, practices, and customs.

99.     All acts were carried out in accordance with:

   a.  Formal policies, rules, and procedures of **DEFENDANT CITY**;

   b.  Actions and decisions by **DEFENDANT CITY'S** policymaking agents including, but not limited to, the NYPD Chief of Department and Chief of Patrol;

   c.  Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by **DEFENDANT CITY** by its agents; and

   d.  **DEFENDANT CITY'S** deliberate indifference to Plaintiff's rights, including those secured by the Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by **DEFENDANT CITY'S** enforcement, promulgation, and/or approval of policies that violate the same.

100.    These policies and customs include:

a. Policies directing the search of arrestees' cell phones without consent or lawful authority;

b. Policies directing the search of arrestees' cell phones without consent or lawful authority if such person has previously been convicted of a crime;

c. Policies directing the search and seizure of persons previously convicted of a crime; and

d. The unlawful cataloguing, storage, and utilization of IMEI numbers from arrestees' cellphones.

101. The existence of the policies and practices described above are not only evinced through the conduct described in Plaintiff's statement of facts, but through arrest paperwork completed by **DEFENDANT NYPD MEMBERS**.

102. The NYPD paperwork contains at least three (3) separate sections wherein Plaintiff's cell phone IMEI number was documented by **NYPD DEFENDANTS**, demonstrating a practice and policy of collecting and documenting this information in official NYPD paperwork.

103. This NYPD paperwork generated in this matter further states, in relevant part, "**DEFT WAS COVICTED [sic] OF A PRIOR CRIME. IMEI SEARCH.**"

104. This language is significant enough to have been included in the section containing only a brief synopsis of the relevant arrest details.

105. That **PLAINTIFF** was previously convicted of a crime had no legal bearing upon his custodial arrest in this matter.

106. That **PLAINTIFF** was previously convicted of a crime did not provide a legal basis for the search of his cell phone.

107. Plaintiff had no warrant for his arrest.

108.   Plaintiff was not on probation or parole.

109.   No exceptions to New York Criminal Procedure Law (C.P.L.) § 150.20, which mandates the issuance of a Desk Appearance Ticket in lieu of custodial arrest, applied to **PLAINTIFF**.

110.   Nevertheless, **DEFENDANTS** placed Plaintiff under custodial arrest and forced him to remain in NYPD custody for an extended period of time.

111.   In accordance with **DEFENDANT CITY** policy, NYPD MEMBERS seized and searched Plaintiff's personal cellphone without consent or lawful authority to do so.

112.   In accordance with **DEFENDANT CITY** policy, Plaintiff was seized and detained, contrary to applicable law, because of **PLAINTIFF's** past conviction.

113.   In accordance with **DEFENDANT CITY** policy, Plaintiff's phone was searched, contrary to applicable law, because of **PLAINTIFF'sf** past conviction.

114.   **DEFENDANT NYPD MEMBERS** collected, catalogued, stored, and searched **PLAINTIFF's** IMEI number from his personal cell phone.

115.   **DEFENDANT CITY** accepted, encouraged, condoned, ratified, sanctioned, and/or enforced these policies, whether expressly or tacitly, and created the conditions giving rise to Plaintiff's serious injuries and damages.

## SECOND CLAIM FOR RELIEF

### Excessive Force

*Against Defendant NYPD Does # 1-4 Pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution*

116.   Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

117.   **DEFENDANT NYPD MEMBERS'** use of force, as described above, was excessive.

118.    **DEFENDANT NYPD MEMBERS** applied overly-tight handcuffs to Plaintiff.

119.    **DEFENDANT NYPD MEMBERS** refused to loosen and/or adjust these overly-tight handcuffs for an unreasonable period of time, causing Plaintiiff to suffer serious injuries, despite **PLAINTIFF's** repeated requests and expressions of pain.

120.    At no time did Plaintiff resist arrest, attempt to flee, or otherwise contribute to any scenario that might mitigate either **DEFENDANTS'** application of overly-tight handcuffs or their refusal to adjust the same.

121.    **DEFENDANT NYPD MEMBERS'** use of excessive force against Plaintiff was unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

122.    As a result of **DEFENDANT NYPD MEMBERS'** acts and omissions, Defendants deprived Plaintiff of federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; and caused Plaintiff to expend costs.

## THIRD CLAIM FOR RELIEF

### Excessive Force and Unlawful Search and/or Seizure

*Against Individual NYPD Defendants and Defendant City Pursuant to the New York State Constitution and the <u>New York City Administrative Code</u> Chapter 8, Title 8, § 8-801 et seq.*

123.    **DEFENDANT NYPD MEMBERS**, as police officers employed by **DEFENDANT CITY**, are "covered individuals" as defined in <u>NYC Admin. Code Ch. 8, Tit. 8, § 8-801</u>.

124.    As described above, the **DEFENDANT NYPD MEMBERS** violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

125. Through Defendants' conduct described herein, **DEFENDANT NYPD MEMBERS** utilized excessive force against Plaintiff and subjected him to unreasonable searches and seizures

126. Not only did Defendants lack lawful authority to seize and search Plaintiff, but the charges Defendants levied against Plaintiff did not permit Plaintiff's seizure by custodial arrest under applicable New York law.

127. Even if Defendants were to claim they possessed cause to believe that Plaintiff had possessed a switchblade knife, whether before or after unlawfully searching and seizing him, the NYPD Defendants did not have the lawful authority to continue to seize Plaintiff throughout his custodial arrest under the New York State Criminal Procedure Law (C.P.L.) § 150.20(1)(a).

128. The charges against Plaintiff were not arrest-eligible under New York State and City law, and no exceptions to this rule applied to Plaintiff.

129. The C.P.L. mandates that summonses are issued for offenses other than violent felonies, sexual offense allegations, charges that may result in the issuance of an order of protection, and certain other charges specified under C.P.L. § 150.20(1), *et seq*.

130. Furthermore, Plaintiff did not personally qualify for any of the circumstantial exceptions to the C.P.L. forbidding custodial arrest for minor offenses.

131. Plaintiff did not have any active warrants. Plaintiff provided his true legal identity and even presented his valid identification upon Defendants' request.

132. Plaintiff was not on probation or parole.

133. Plaintiff did not present a danger to himself or others.

134. Defendants did not have the lawful authority to seize, detain, Plaintiff and/or search Plaintiff and his personal belongings.

135.    Defendants' conduct injured Plaintiff, caused him to expend costs, deprived Plaintiff of liberty and property interests, and otherwise caused damages to Plaintiff.

136.    As described herein, **DEFENDANTS'** seizure of Plaintiff's person and property was unlawful.

137.    As described herein, **DEFENDANT HOSSAIN's** searches of Plaintiff**,** with the assistance and/or under the supervision of **DEFENDANTS RODRIGUEZ** and **VELEZ,** were unlawful.

138.    As described herein, **DEFENDANT NYPD MEMBERS'** utilization of force against Plaintiff was excessive.

139.    **DEFENDANT NYPD MEMBERS** and their employer, **DEFENDANT CITY**, are liable to Plaintiff for this conduct and Plaintiff's resulting damages and injuries.

140.    Under this provision, **DEFENDANT NYPD MEMBERS** may not invoke the defense of qualified immunity to defeat Plaintiff's claims against them.

141.    Under this provision, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining **DEFENDANT CITY** and its NYPD members from engaging in further violative conduct.

## FOURTH CLAIM FOR RELIEF

**Unlawful Search and Seizure**
*Against NYPD Defendants Pursuant to 42 USC § 1983, the Fourth and Fourteenth Amendments to the United States Constitution and Against Defendant City Pursuant to Monell v Social Svcs (436 U.S. 658 [1978])*

142.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

143.    Defendants at all times lacked lawful authority to seize and/or detain and/or search Plaintiff's person and/or property.

144.    Defendants' searches and seizures of Plaintiff had no lawful basis given the facts observed by Defendants.

145.    Defendants' searches and seizures of Plaintiff were instead motivated by Defendants' mere whim or caprice.

146.    Defendants lacked the probable cause necessary to arrest Plaintiff, having no probable cause to believe Plaintiffs had committed any crime.

147.    At no time did Plaintiff consent to the warrantless searches of his person or property.

148.    At no time did Plaintiff consent to his forcible seizure.

149.    Plaintiff was conscious of all Defendants' intrusions described herein.

150.    The entirety of Defendants' conduct in searching and seizing Plaintiff was unlawful.

151.    Defendants are liable to Plaintiff for the injuries, intrusions, and deprivations caused by this conduct.

## FIFTH CLAIM FOR RELIEF

### Violations of Plaintiff's Fair Trial Rights
*Against Defendants Hossain, Velez, and Rodriguez Pursuant to 42 USC § 1983 and the Sixth and Fourteenth Amendments of the United States Constitution*

152.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

153.    **DEFENDANT NYPD MEMBERS** were investigating officials involved in arresting and investigating the circumstances of the events described herein.

154.    While performing their duty as members the NYPD, Defendants fabricated evidence likely to influence a jury's decision, were that information to be presented to a jury, and forwarded that information to prosecutors.

155.    **DEFENDANT NYPD MEMBERS** disseminated false information to prosecutors, the Court, and the public to intentionally misrepresent the circumstances of Plaintiff's arrest and/or **DEFENDANT CITY'S** response to this incident in an attempt to exonerate themselves of wrongdoing, discredit Plaintiff, and taint prosecutors and/or any potential jury pool and/or finder of fact.

156.    As a result, **DEFENDANT NYPD MEMBERS** deprived Plaintiff of liberty interests and caused Plaintiff to suffer damages.

157.    These deprivations include, *inter alia*, Plaintiff's detention in NYPD's custody prior to arraignment, forcing Plaintiff to undertake related costs and expenses, and further deprivations.

## SIXTH CLAIM FOR RELIEF

### Failure to Intervene
*Against Defendants Rodriguez, Marmorale, Sievers, and NYPD Does #2-3 Pursuant to 42 USC § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution*

158.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

159.    Defendants possessed a duty to intervene on Plaintiff's behalf as NYPD members.

160.    **DEFENDANT RODRIGUEZ**, as the supervising NYPD member at the scene responsible for overseeing the NYPD police officers present, oversaw and approved of the violative conduct of his supervisees. At no point did **DEFENDANT RODRIGUEZ** intervene in Plaintiff's unlawful seizure, arrest, or search, despite possessing notice, duty, and opportunity to do so.

161.    **DEFENDANTS MARMORALE** and **SIEVERS** were present during Plaintiff's stop, arrest, search and transport to the 33rd Transit Bureau.

162.    **DEFENDANT MARMORALE** stated, in sum and substance, that he and his fellow officers had followed and observed Plaintiff on the platform. Plaintiff had committed no crime.

**DEFENDANT MARMORALE and SIEVERS** were aware that the arrest, search, and charging of Plaintiff were unlawful.

163.   Neither **DEFENDANT MARMORALE** nor **SIEVERS** intervened despite possessing notice, duty, and opportunity to do so.

164.   **DEFENDANT DOES # 2-3** were aware that Plaintiff was subjected to overly-tight handcuffs but refused to intervene or to loosen these handcuffs, despite possessing notice, duty, and opportunity to do so.

165.   Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

166.   At no time did any Defendants intervene in the deficient conduct of their colleagues or otherwise fulfil their specialized duty to protect Plaintiff.

167.   Such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff respectfully seeks relief from this Court and demands judgment against the individual Defendants and the City of New York in the following forms:

      i.    Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

      ii.   Actual damages in an amount to be determined at trial against Defendant City;

     iii.   Policy change;

     iv.   Remedial training;

    ii.    Statutory attorney's fees, disbursements, punitive damages, actual damages, and costs of the action pursuant to, *inter alia,* <u>42 U.S.C. §1988</u> and <u>NYC Admin. Code § 8-801</u>; and

    iii.    Such other relief as the Court deems just and proper.

**DATED:**    Brooklyn, New York
January 15, 2026

    Respectfully submitted,

    **KAISHIAN & MORTAZAVI LLC**
Attorneys for Plaintiff

    Maryanne K. Kaishian
55 Washington Street, Ste. 461
Brooklyn, New York 11201
T: (347) 662-2421
E: eservice@kaishianlaw.com

## COMPLAINT VERIFICATION

I, **JAMES JACKSON**, affirm the following to be true under the penalties of perjury:

1. I am the Plaintiff in the above matter, *Jackson v City of New York, et al.*

2. I am over 18 years old and I am a resident of KINGS COUNTY, City and State of New York.

3. I have read the annexed Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.

Date: ___1/15/26___

Signed: _____

Print: ___James Jackson___

---

STATE OF NEW YORK )

        SS.

COUNTY OF KINGS       )

On the __15th__ day of __January__ in the year 2026, before me, the undersigned notary public, personally appeared **JAMES JACKSON**, either by physical presence or, where so indicated by the Notary Seal below, via electronic means in accordance with my New York State license as an electronic notary. This individual is known to me, or, on the basis of satisfactory evidence provided to me, has proved to me to be the individual(s) whose name(s) is/are subscribed to the within instrument. The individual(s) acknowledged to me that they executed the same their capacity, and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

MARYANNE K KAISHIAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02KA0015799
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES NOV. 7, 2027

_____
Notary Public

1